[No. B139517. Second Dist., Div. Four. Oct. 26, 2000.]

In re ALJAMIE D. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND
FAMILY SERVICES, Plaintiff and Respondent, v.
CHERYL D., Defendant and Appellant.

## COUNSEL

Sharon S. Rollo, under appointment by the Court of Appeal, for Defendant and Appellant.

Lloyd W. Pellman, County Counsel, and Pamela Soncini, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

## VOGEL (C. S.), P. J.—

### INTRODUCTION

Defendant and appellant Cheryl D. appeals from an order of the juvenile court denying an evidentiary hearing on her petition filed pursuant to Welfare and Institutions Code section 388,[1] by which appellant sought to modify the juvenile court's placement order regarding her daughters, Aljamie D. and Ashara D. She also appeals from an order appointing the children's maternal aunt as their legal guardian. We agree with appellant that she was entitled to a full hearing on her section 388 petition prior to the court's holding a selection and implementation hearing, and we therefore reverse both orders.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant is the mother of five children. Two of the children, Aljamie (born September 1988) and Ashara (born January 1991), are the only subjects of this appeal. The other three children are Kellen D. (born December 1984), Earl H. (born May 1993), and Emma H. (born June 1996).

In a petition filed on December 5, 1996, the Los Angeles County Department of Children and Family Services (Department) alleged that the four older children previously had been dependents of the juvenile court due to appellant's drug abuse. Ashara and Earl were born prenatally exposed to drugs. According to the petition, appellant had complied with the case plan and jurisdiction was terminated. A report prepared by the Department indicated that as a result of the prior petition, Kellen was placed with his father, David C., and remained with him. Aljamie and Ashara had also been placed with their father, David C., and Earl was placed with his father, Larry H. Jurisdiction was terminated in 1994. At some point, appellant had reunited with the children, except for Kellen who remained with his father.

---

[1] All further statutory references are to the Welfare and Institutions Code.

The petition alleges appellant was arrested in early December 1996 when she was observed to be under the influence of drugs such that she was incapable of providing care for the children. Appellant had failed to ensure that Aljamie and Ashara attended school regularly. Aljamie and Ashara were detained in the home of their maternal aunt, Evelyn H., and Emma and Earl were placed in the home of their father, Larry H. The report prepared by the Department indicated appellant had never completed a program. She was judged capable of providing care and nurturing to her children when she was not using drugs, but the children were subjected to general neglect when she used cocaine.

The section 300 petition was sustained on January 28, 1997, and the Department was ordered to provide family reunification services. Appellant was ordered to participate in drug rehabilitation with random testing and parenting classes. Appellant was granted monitored visitation.

A six-month review hearing was conducted in July 1997. The Department reported that all four children had been placed with Evelyn. Appellant had not enrolled in a drug program, although she reported she had been attending some meetings and tested clean twice.

At the 12-month review hearing in March 1998, the Department recommended termination of family reunification services and appointment of Evelyn as legal guardian. Appellant had recently begun complying with the case plan, having enrolled in a drug rehabilitation program in January 1998. Appellant had eight clean drug tests between July and September 1997, but apparently had not tested since then. She was participating in parenting classes and visiting the children regularly. Nonetheless, the court terminated family reunification services and set the matter for a section 366.26 hearing.[2]

The section 366.26 hearing was held in July 1998. Appellant had regular visitation with the children at her residential drug rehabilitation program. Evelyn was willing to be the legal guardian of the children. The Department recommended long-term foster care, however, and the juvenile court ordered long-term foster care as the permanent plan.

At a review hearing in January 1999, the Department reported appellant had completed parenting classes and her drug rehabilitation program, and continued to test clean in random drug testing. She was temporarily living with Evelyn and the children after completing the residential drug treatment program. The court liberalized appellant's visitation to unmonitored and

---

[2]The record indicates the oldest child, Kellen, was also placed with Evelyn H. in September 1997, after his father left him in appellant's care in early 1997.

granted to the Department discretion to start a 60-day visit. The court continued the order of long-term foster care for Aljamie and Ashara. Earl and Emma were released to the custody of their father and the court terminated the suitable placement order.

At the next review hearing in July 1999, the Department reported that appellant was still residing in Evelyn's home with the children, but was seeking housing and employment. The Department stated there was no imminent risk as appellant had proved her sobriety by submitting to ongoing random drug testing. Pursuant to the Department's recommendation, the court set a section 366.26 selection and implementation hearing to consider legal guardianship as to Aljamie and Ashara. The court terminated its jurisdiction over Earl and Emma.

For the section 366.26 hearing in December 1999, the Department reported that Aljamie and Ashara both wanted to be with their mother, who was no longer residing with them as of September 1999. Appellant had begun living with Larry H. and their children, Earl and Emma. Aljamie and Ashara had weekend overnight visits with appellant. The court continued the matter until February 16, 2000, for a contested hearing.

A review hearing was conducted on January 12, 2000. The Department's report indicated that Aljamie and Ashara continued to want to live with appellant. According to the Department, "[e]ven though minors' mother has complied with all the court orders she is not ready to reunify with her children." Appellant had not obtained her own apartment, found employment, or resumed her education. The court continued in effect all previous orders pending the contested section 366.26 hearing. The next review hearing was set for July 12, 2000.

On the same day, appellant filed a section 388 petition seeking to modify the order of long-term foster care. Appellant alleged she had fully complied with the case plan, and attached completion certificates for parenting classes, a domestic violence program, Via Avanta Residential Program, a job readiness workshop, a perinatal health education program, and a "behavior change & skills building prevention" program. She further alleged that the children wish to return to her, and that she had visited the children consistently. She requested a 60-day trial visit.

On January 31, 2000, the juvenile court denied the petition ex parte, with the handwritten notation: "388 filed 1/12/00 Just had a hearing on 1/11/00. No change since 1/11/00. File new 388 8 wks. prior to 7/14/00."

The next hearing was held on February 16, 2000, the date scheduled for the contested section 366.26 hearing. Just prior to the hearing, appellant filed another section 388 petition identical in substance to the one she filed previously.

The court initially indicated it would first conduct the section 366.26 hearing, which would provide the court with all the information needed to consider the 388 petition. Counsel for the children pointed out that the court needed to first decide whether it would hear the section 388 petition and, if so, conduct that hearing before proceeding to the section 366.26 hearing. After counsel for the Department asserted that the petition failed to establish that a change in placement would be in the best interest of the children, and counsel for appellant argued to the contrary, the court responded: "Okay. Now I hope that language is accurate because I have now actually entertained the hearing although I didn't say grant it on a piece of paper. And I have heard the offers of the Department and the mother and I am taking the actual decision of the 388 under submission pending the evidence and the 26 hearing. We will make a little law here. It makes no sense for me to entertain the evidence on the 388 which is going to be identical to the evidence in the 26, although completely different standards may be involved, so I'm hearing the 388 tantamount that's a grant of the 388 and now I'm going to indicate that I'm taking the decision of the 388 under submission and proceed with the evidence on the 26 hearing."

The Department social worker was then called to testify. In ruling on an objection the court indicated it was combining the section 388 and section 366.26 hearings. Counsel for the Department voiced her disagreement with the court that the evidence for the section 388 and the section 366.26 hearings would be the same. "[T]he Department has not evaluated all the circumstances that they would have if the court had officially granted a hearing on the 388." The court replied: "Then to make it absolutely crystal clear for a record on appeal, because no doubt this is going up, at this time, notwithstanding the conversation about the general issue that I had with [appellant's counsel], since the Department has to my knowledge never received notice of the newest 388 filed today, I'm going to deny that outright right now. So we will concentrate now on the 26 issues only." Counsel for the Department admitted it had received the section 388 petition and noted that it was identical to the one filed January 12th. The court indicated it would proceed to consider only the single issue of whether it was in the children's best interest for the maternal aunt to be appointed their legal guardian.

Counsel for the Department reminded the court that at the previous hearings to review the permanent plan (RPP hearings), the issue of placement with appellant had not been considered because a section 366.26

hearing had been scheduled. Counsel for appellant stated: "Your Honor, let me remind the court of the most recent history; that when I tried to argue at an RPP the return to mother, I was told to file a 388. When I filed the 388, I was told because we had just had the hearing, I had the 388 denied."

The court allowed appellant to testify as to her ability to care for the children in her present home. Counsel for the Department objected, stating "the court having denied the 388, return to the mother is not an option at the 26. The only issue is whether long-term foster care, or legal guardianship is the better plan for the girls." She later added, "And one of the options to the court at a 26 is not return of the parent." The court responded: "Got you. You don't have to say another word." The court then sustained the Department's objection to the entire line of questioning regarding whether returning the children to appellant was appropriate.

The court later stated: "I just want the record to reflect that because there has to be a reason why this court denied the 388 for the original reason that it came right after the prior hearing, and this case, the situation had not changed."

Trial of the matter continued on February 22 and 24, 2000. On February 22, the court denied the section 388 petition in writing, with the following handwritten notation: "0 prima facie case shown. File again 6 wks prior to next ct date."

Aljamie's testimony was taken in chambers. She testified repeatedly that she would prefer to be with her mother and wished she could see her more.

After Aljamie testified, counsel for the Department stated: "I would ask that the testimony and questioning be limited to issues of visitation and continuing the relationship, not whether or not the girls will be living with their mom since the court has ruled that that's not an option." The court responded: "[W]e are here to determine only the issue between long term foster care and legal guardianship at this time."

Ashara also testified that her first choice would be to live with her mother.

After the testimony concluded, the court heard argument of counsel. Counsel for the Department again pointed out that the court's options at a section 366.26 hearing do not include return of the children to a parent. She conceded that "[appellant] has complied with court orders. At this point she

is clean and sober and may well be able to provide the girls with a stable home." She argued that, nonetheless, the court should not take that into consideration in determining what is in the children's best interest.

The court found that legal guardianship with the maternal aunt was in the best interest of the children. The court issued letters of guardianship to Evelyn H.

This appeal followed.

DISCUSSION

Section 388 provides that "[a]ny parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court or in which a guardianship was ordered pursuant to Section 360 for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court. The petition shall . . . set forth in concise language any change of circumstance or new evidence which are alleged to require such change of order or termination of jurisdiction. [¶] If it appears that the best interests of the child may be promoted by the proposed change of order or termination of jurisdiction, the court shall order that a hearing be held . . . ."

In addition, California Rules of Court, rule 1432, provides that "(a) A petition for modification shall be liberally construed in favor of its sufficiency. . . . [¶] (b) If the petition fails to state a change of circumstance or new evidence that might require a change of order or termination of jurisdiction, the court may deny the application ex parte. [¶] (c) If the petition states a change of circumstance or new evidence and it appears that the best interest of the child may be promoted by the proposed change of order or termination of jurisdiction, the court may grant the petition after following the procedures in subdivisions (d) and (e)."

██ The juvenile court has discretion whether to provide a hearing on a petition alleging changed circumstances. But in doing so, "there are safeguards to prevent arbitrariness in precluding such hearings. Specifically, a petition must be liberally construed in favor of its sufficiency (Cal. Rules of Court, rule 1432(a)) and a hearing may be denied only if the application fails to reveal any change of circumstance or new evidence which might require a change of order. Only in this limited context may the court deny the

petition ex parte. (Rule 1432(b).)" (*In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1413-1414 [5 Cal.Rptr.2d 148], fn. omitted.) " 'Thus, if the petition presents any evidence that a hearing would promote the best interests of the child, the court will order the hearing.' " (*Id.* at p. 1414, quoting *In re Heather P.* (1989) 209 Cal.App.3d 886, 891 [257 Cal.Rptr. 545]; see also *In re Hashem H.* (1996) 45 Cal.App.4th 1791, 1798-1799 [53 Cal.Rptr.2d 294], also citing *In re Jasmon O.* (1994) 8 Cal.4th 398, 415 [33 Cal.Rptr.2d 85, 878 P.2d 1297].) " 'The parent need only make a prima facie showing to trigger the right to proceed by way of a full hearing.' " (*In re Hashem H., supra,* 45 Cal.App.4th at p. 1799, citing *In re Marilyn H.* (1993) 5 Cal.4th 295, 310 [19 Cal.Rptr.2d 544, 851 P.2d 826]; *In re Jeremy W., supra,* 3 Cal.App.4th at p. 1414.) Indeed, to be entitled to a hearing on her petition, appellant needed only to show "probable cause"; she was not required to establish a probability of prevailing on her petition. (*In re Jeremy W., supra,* at p. 1414, citing *Ansley v. Superior Court* (1986) 185 Cal.App.3d 477, 490 [229 Cal.Rptr. 771].)

■ We find that appellant met this standard. Clearly her petition made out a prima facie case of changed circumstances. She had completed numerous educational programs and parenting classes, and had tested clean in weekly random drug tests for over two years. She had visited consistently with the children and continued to have a strongly bonded relationship with them. Indeed, the Department does not dispute that appellant's petition alleged changed circumstances. Rather, the Department argues that the petition failed to show how modification of the placement order would be in the children's best interests.

In order to be entitled to a hearing on a petition for modification, a parent must show changed circumstances and it must appear that the best interests of the child may be served by a change in the order. (§ 388; Cal. Rules of Court, rule 1432(c).) We cannot see how the petition failed to show prima facie evidence which might justify modification of the court's order regarding the permanent placement plan for the children. Appellant's petition showed that the best interests of the children potentially would be advanced by the proposed 60-day visit and eventual change in the placement order. The children, ages 9 and 11, repeatedly made clear that their first choice was to live with their mother. While a child's wishes are not determinative of her best interests, the child's testimony that she wants to live with her mother constitutes powerful demonstrative evidence that it would be in her best interest to allow her to do so. (*In re Michael D.* (1996) 51 Cal.App.4th 1074, 1087 [59 Cal.Rptr.2d 575].)

We reiterate that to be entitled to a hearing on her petition, appellant needed only to show "probable cause"; she was not required to establish a

probability of prevailing on her petition. (*In re Jeremy W., supra,* 3 Cal.App.4th at p. 1414, citing *Ansley v. Superior Court, supra,* 185 Cal.App.3d 477, 490.)

The Department next contends that even if the court erred in denying the section 388 petition, any error was harmless because "mother introduced all the evidence and testimony available which bore upon the then [*sic*] her ability of mother to parent. Thus, mother was not prejudiced by the trial court's denial of a 388 hearing, because at the 366.26 hearing held that same day, the court heard testimony which was very similar, if not identical, to the evidence which would have been presented at the 388 hearing. . . . [¶] . . . Yet, despite what mother presented, the court found that mother was not prepared to adequately and safely care for her children." While it is true that the court initially vacillated regarding the section 388 petition, the record makes clear that the court denied the section 388 petition without the benefit of a full evidentiary hearing on the matter. Counsel for the Department vociferously and successfully objected that the evidence to be considered for the section 388 petition was different from that in a section 366.26 hearing, and that the court could not consider return of the children to appellant. Although some testimony regarding appellant's ability to parent the children and their desire to live with her came in, the court ultimately made clear that return of the children to appellant was not at issue. Although the court commented on the issue of returning the children to appellant—indicating appellant would probably succeed in achieving that result at some point but had not convinced the court yet—the evidence regarding that issue was obfuscated by vacillation and circumscribed as a result of sustained objections. We conclude the juvenile court abused its discretion, and denied appellant the opportunity of a full hearing on her section 388 petition.

As we found in *In re Hashem H., supra,* 45 Cal.App.4th 1791, 1801, "This was not an adequate substitute for a hearing on appellant's section 388 petitions. The court must first afford appellant a fair hearing on her alleged change of circumstances before proceeding to the section 366.26 hearing and disposition. (See *In re Jeremy W., supra,* 3 Cal.App.4th at p. 1416.)" The court is instructed to conduct the required hearing in this matter without delay in order to minimize the disruption to the children's lives.

Because we reverse for failure to set a hearing on the section 388 petition, we need not reach appellant's other contentions.

## DISPOSITION

The orders are reversed and the cause remanded for further proceedings.

Epstein, J., and Curry, J., concurred.